UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CIVIL DOCKET NO.: 08 CV 6059

| | |
|---|---|
| ANU BHARDWAJ, <br><br> Plaintiff, <br><br> v. <br><br> DEBORA A. GUTHRIE, JOSEPH F. KELLY, JR., ESQUIRE, CAPITOL HEALTH ADVISORS, LP, CAPITOL HEALTH GLOBAL, INC., CAPITOL HEALTH GLOBAL, LLC, CAPITOL HEALTH, INC., CAPITOL HEALTH CONSULTANTS, INC., CAPITOL HEALTH MANAGEMENT COMPANY, LLC, CAPITOL HEALTH MANAGEMENT CORPORATION, CAPITOL HEALTH PARTNERS, LP, CAPITOL HEALTH MANAGEMENT COMPANY II, INC., CAPITOL HEALTH PARTNERS III, LP, CAPITOL HEALTH ADVISORS III, LLC, CAPITOL HEALTH MANAGEMENT COMPANY III, INC., ABC CORPORATIONS, XYZ PARTNERSHIPS/ LIMITED PARTNERSHIPS, JANE DOE AND RICHARD ROE, <br><br> Defendants. | **AMENDED COMPLAINT** <br><br> **Plaintiff Demands a Jury Trial** |

Plaintiff, Anu Bhardwaj, by and through her undersigned counsel, respectfully alleges:

**Jurisdiction and Venue**

1.  This Honorable Court has jurisdiction over the parties and the subject matter of this litigation pursuant to 28 U.S.C. §1332, because all of the parties are of diverse citizenship and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of costs and interest.

1

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a) since Defendants, Debora A. Guthrie, Joseph F. Kelly, Jr., Esquire, Capitol Health Advisors, LP, Capitol Health Global, Inc., Capitol Health Global, LLC, Capitol Health, Inc., Capitol Health Consultants, Inc., Capitol Health Management Company LLC, Capitol Health Management Corporation, Capitol Health Partners, LP, Capitol Health Management Company II, Inc., Capitol Health Partners III, LP, Capitol Health Advisors III, LLC, Capitol Health Management Company III, Inc. and any other entities involved or, upon information and belief, to be involved in this matter, maintain their principal places of business in this judicial district at 152 East 74th Street, New York, NY 10021.

**Jury Demand**

3. Plaintiff demands a trial by jury.

**Parties**

4. Plaintiff, Anu Bhardwaj is a citizen of the United States residing in Toronto, Canada. Immediately prior to residing in Canada, Ms. Bhardwaj resided in Stockholm, Sweden. Before going abroad, she was a permanent resident of Isle of Palms, South Carolina. Ms. Bhardwaj maintains a home in Isle of Palms, South Carolina, and has not established another domicile since leaving.

5. Defendant, Debora A. Guthrie, is a citizen of the United States residing in New York.

6. Defendant, Joseph F. Kelly, Jr., Esquire, is a citizen of the United States residing in New York.

7. Defendant, Capitol Health Advisors, LP, is a Delaware limited partnership with its principal place of business at 152 East 74th Street, New York, NY 10021.

8. Defendant, Capitol Health Global, Inc., is a Delaware corporation with its principal place of business at 152 East 74th Street, New York, NY 10021.

9. Defendant, Capitol Health Global, LLC, is a Delaware limited liability company with its principal place of business at 152 East 74th Street, New York, NY 10021.

10. Defendant, Capitol Health, Inc. is a Delaware corporation with its principal place of business at 152 East 74th Street, New York, NY 10021.

11. Defendant, Capitol Health Consultants, Inc., is a Delaware corporation with its principal place of business at 152 East 74th Street, New York, NY 10021.

12. Defendant, Capitol Health Management Company LLC, is a Delaware limited liability company with its principal place of business at 152 East 74th Street, New York, NY 10021.

13. Defendant, Capitol Health Management Corporation, is a Delaware corporation with its principal place of business at 152 East 74th Street, New York, NY 10021.

14. Defendant, Capitol Health Partners, LP, is a Delaware limited partnership with its principal place of business at 152 East 74th Street, New York, NY 10021.

15. Defendant, Capitol Health Management Company II, Inc., is a New York corporation with its principal place of business at 152 East 74th Street, New York, NY 10021.

16. Defendant, Capitol Health Partners III, LP, is, upon information and belief, a Delaware limited partnership with its principal place of business at 152 East 74th Street, New York, NY 10021, to be formed on or about July 15, 2008 or the time of the closing to investors of the fund for which it will be created.

17. Defendant, Capitol Health Advisors III, LLC, is, upon information and belief, a Delaware limited liability company with its principal place of business at 152 East 74th Street,

New York, NY 10021, to be formed on or about July 15, 2008 or the time of the closing to investors of the fund for which it will act as general partner of Capitol Health Partners, III, LP.

18. Defendant, Capitol Health Management Company III, Inc., is, upon information and belief, a Delaware corporation with its principal place of business at 152 East 74th Street, New York, NY 10021, to be formed on or about July 15, 2008 or the time of the closing to investors of the fund for which it will provide management services.

19. ABC Corporations are corporations or future corporations related to the above-referenced Defendants and/or facts described herein, which are liable to Plaintiff for her damages and which will not defeat diversity jurisdiction in this matter if joined as Defendants.

20. XYZ Partnerships/limited partnerships are partnerships or future partnerships related to the above-referenced Defendants and/or facts described herein, which are liable to Plaintiff for her damages and which will not defeat diversity jurisdiction in this matter if joined as Defendants.

21. Jane Doe and Richard Roe are individuals related to the above-referenced Defendants and/or facts described herein, who are liable to Plaintiff for her damages and who will not defeat diversity jurisdiction in this matter if joined as Defendants.

**Factual Allegations**

22. At all times relevant herein, Debora A. Guthrie and Joseph F. Kelly, Jr., Esquire, in conjunction with and through their above-referenced affiliated "Capitol Health" corporations, limited liability companies, partnerships and/or limited partnerships, (hereafter collectively referred to as "Capitol Health") organized, operated, promoted, marketed and otherwise participated in a variety of venture capital and/or private equity fund deals and potential deals focused upon health care and health care IT both within the United States and abroad.

23. At all times relevant herein, Anu Bhardwaj, a Fulbright scholar with unique experience throughout India, Southeast Asia, Sweden, Iceland, Canada and elsewhere around the world, through her strategic input, global network of contacts and tireless marketing, business development and fundraising efforts, acted on behalf of, in furtherance of and added value to Capitol Health and the present and future funds associated therewith.

24. These efforts by Ms. Bhardwaj on behalf of Capitol Health included, but are not limited to: travel around the globe, meetings (in places such as Edinburgh, Scotland, New Delhi, India, Bangalore, India, Mumbai, India, Hyderabad, India, Dubai, United Arab Emirates, Abu Dhabi, United Arab Emirates, Munich, Germany, Reykjavik, Iceland, Copenhagen, Denmark, Gothenburg, Sweden, Stockholm, Sweden and others), organization of meetings for Capitol Health personnel and introductions of Capitol Health personnel to officials at the highest levels of government and private industry (in places such as those above-mentioned, as well as London, England, Toronto, Canada, San Francisco and New York).

25. These efforts by Ms. Bhardwaj facilitated the business of Capitol Health in developing a global investment and marketing strategy, contacting a new stream of potential foreign investors and co-investment partners, affiliating with new industry leaders possessing synergistic potential in conjunction with Capitol Health's current investment portfolios and establishing pipelines for investment and overall development for Capitol Health's current and future funds in the established and emerging market environment.

26. Ms. Bhardwaj's involvement with Capitol Health commenced on or about September of 2007 when, on more than one occasion she was contacted by or interacted with principals of Capitol Health, including, but not limited to: Debora A. Guthrie and Joseph F.

Kelly, Jr., interested in utilizing her services to advance the interests of Capitol Health and its associated funds.

27. Ms. Bhardwaj agreed to accept involvement on behalf of Capitol Health and actively undertook efforts to act on their behalf and in furtherance of their interests. She began to attend meetings as a representative of Capitol Health and to otherwise interact with potential investors and co-investment partners on their behalf. She also initiated discussions with her many contacts in an effort to set up meetings and advance Capitol Health's marketing, development and fundraising efforts around the globe. She became instrumental in and helped to spearhead Capitol Health's global strategic development, marketing and fundraising strategy.

28. At the request of Capitol Health and as a means of reducing the expectations of the parties to writing, Ms. Bhardwaj signed a letter agreement and term sheet on November 28, 2008 with Capitol Health Partners, III, LP and Capitol Health Management Company, III, Inc., entities which, upon information and belief, did not legally exist at that time and as of this date still do not legally exist. The documents were signed on behalf of Capitol Health by the alleged President, Joseph F. Kelly, Jr.

29. These documents narrowly outlined certain marketing and fundraising activities that Ms. Bhardwaj was to undertake on behalf of Capitol Health Partners III, LP, and certain obligations Capitol Health had to Ms. Bhardwaj in return for those efforts. The obligations of Capitol Health to Ms. Bhardwaj included, but were not limited to: a base salary of $150,000.00, a performance bonus, a monthly retainer, carry interest, profit-sharing, commission, reasonable expenses and medical insurance. In addition, through direct interaction with the principals of Capitol Health, Ms. Bhardwaj was promised an opportunity to participate full-time in the fund after closing and in future funds which benefited from her strategic efforts. On November 13,

2007, Joseph Kelly stated that: "The sources of our income and duties may change. However, we will always ensure that talent and work are properly recognized by Capitol Health, regardless of which entity is involved."

30. During the course of her activities on behalf of Capitol Health, Ms. Bhardwaj far exceeded the parameters, scope, percentage of time expended and contribution to the value of the Capitol Health fund(s) originally anticipated by the Capitol Health principals. On November 13, 2007, Joseph Kelly stated to Ms. Bhardwaj that Capitol Health was "overwhelmed by your energy, organization and success in arranging so many meetings and contacts. We are already learning from you." Indeed, Debora Guthrie stated on December 5, 2008, that Ms. Bhardwaj was "doing an absolutely fantastic job for us in Stockholm," and again on December 21, 2008, that Ms. Bhardwaj was "doing a fantastic job!" and was "exceeding [her] already high expectations!" Debora Guthrie also promised that every employee at Capitol Health, and Ms. Bhardwaj in particular, would get fair and appropriate bonuses and/or shares of the carry based upon how hard that employee worked and how much value he or she added to that particular the fund. Further, Rob Coppedge, on behalf of Capitol Health and Debbie Guthrie, promised that Capitol Health would fairly compensate Ms. Bhardwaj for deal-flow introductions for potential portfolio companies upon closing of the fund. Thus, at the urging of the Capitol Health principals and with their approval, she performed well beyond the confines of the signed documents and through her efforts favorably and significantly impacted the value of Capitol Health's current and future fund(s) and the value of the companies within their portfolios. She also added significant value to the prospective fund to be closed in July of 2008 and, through her strategic global efforts, to any additional future funds which could take advantage of the development of marketing strategies, contacts, co-investment partnerships and new pipelines to

established and emerging markets. Ms. Bhardwaj did all of these things based upon Capitol Health's promises to her that her "sweat equity" would be fairly compensated by the entity benefiting from her services and that "talent and work are properly recognized by Capitol Health, regardless of which entity is involved."

31.     As the value of her contributions during the course of her work on behalf of Capitol Health became apparent to its principals, they also became aware of the fact that her contributed value far exceeded their expectations, not only in the scope of work which she had performed, but in the monetary amount for which they would be forced to account and ultimately share with her.

32.     During the time frame Ms. Bhardwaj acted on behalf of Capitol Health and contributed to its interests, she was expected to travel on numerous trips, including meetings and conferences which were essential to the business of Capitol Health and to the tasks which she had been given. Although this was an expected and fundamental aspect of her job description, she was often not reimbursed for her travel expenses on time (if at all), was told a trip was approved and then such approval was withdrawn after the trip was taken, was not provided a corporate credit card or given a cash advance for travel and on more than one occasion was left in a foreign country without sufficient funds to cover her basic needs or provide her with the most basic level of personal security. She was treated in this manner despite the fact that the Capitol Health principals typically traveled in lavish style, wining and dining at top restaurants and staying in luxury accommodations. She often had to pay interest charges and late fees on her own personal credit cards because of Capitol Health's failure to reimburse her for legitimate business expenses. To this day Ms. Bhardwaj retains a large outstanding balance on her credit cards accruing daily interest which pertain to travel undertaken on behalf of Capitol Health.

33. Despite Ms. Bhardwaj's substantial efforts, the relationships forged through her and the value of her contributions to Capitol Health's global business, the principals of Capitol Health, rather than paying her the substantial compensation they had promised for her services, and so they could retain a greater portion of the carry from the funds, unilaterally terminated her without cause on May 14, 2008. She has never been paid any salary, commission or retainer and still has significant expenses outstanding relating to her work for Capitol Health.

## COUNT I – BREACH OF WRITTEN CONTRACT WITH CAPITOL HEALTH PARTNERS III, LP

34. Plaintiff repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if repeated herein verbatim.

35. Plaintiff entered into a written contract with Capitol Health Partners III, LP to assist in placing the fund interests to purchasers.

36. Plaintiff also agreed to "provide such other reasonable or appropriate related services as [Capitol Health Partners III, LP] may request in order to assist" it in connection with placing the fund interests.

37. Capitol Health Partners III, LP promised to pay to Plaintiff 1% of the aggregate purchase price of the interests that she sold, payable at the time the fund receives cash for the purchase.

38. Plaintiff was promised $150,000 annually as compensation and participation in bonuses awarded to managers of CHMC.

39. Plaintiff was promised an accruing monthly retainer of $4,000 payable at the first closing of Capitol Health Partners III, LP, and credited against Plaintiff's earned fundraising fees.

40. Capitol Health Partners III, LP, promised to compensate for other reasonable expenses approved by Capitol Health Management Company.

41. Plaintiff performed all of her obligations under the contract.

42. Capitol Health Partners III, LP, breached the contract by not providing her the compensation it promised, including salary, retainer, and reimbursement of expenses.

## COUNT II – BREACH OF ORAL CONTRACT

43. Plaintiff repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if repeated herein verbatim.

44. Notwithstanding this contract with Capitol Health Partners III, LP, for Plaintiff's services to that fund beyond the scope of the written contract, Capitol Health orally promised Plaintiff additional compensation for her exceptional services and "sweat equity" to this fund and other entities within Capitol Health, including a fair and appropriate bonuses or a share of the carry for that fund and future funds.

45. These constituted valid oral contracts.

46. Plaintiff performed pursuant to these oral contracts and in reliance upon them. Her performance was unequivocally referable to the new, distinct contracts.

47. Capitol Health breached these oral contracts by failing to compensate Plaintiff for her services with appropriate bonuses and/or shares of the carry for her work for present and future funds as they had promised.

## COUNT III – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

48. Plaintiff repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if repeated herein verbatim.

49. Valid contracts, both oral and written, existed between the parties.

50. Capitol Health acted in bad faith and unfairly by terminating Plaintiff while she was performing under the contracts, both written and oral, because they realized that the value of her bonuses and/or share in the carry of present and future funds would be significant, and they did not want to pay the fair and appropriate value that they had promised.

51. Because Capitol Health acted in bad faith and unfairly, they have breached the implied covenant of good faith and fair dealing with regard to the written and oral contracts with present and future Capitol Health funds.

## COUNT IV -- NEGLIGENT MISREPRESENTATION

52. Plaintiff repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if repeated herein verbatim.

53. Over the course of their dealings, the relationship between Plaintiff and Capitol Health was one of trust, confidence, and actual privity.

54. There was a duty for Capitol Health to impart correct information to Plaintiff.

55. Capitol Health made false representations to the Plaintiff regarding her fair and appropriate bonuses and/or participation in the carry of present and future funds in exchange for her efforts, "sweat equity," and contacts, which have significantly increased the values of the respective funds.

56. Capitol Health knew that their representations were false and would induce Plaintiff to expend substantial efforts to increase the values of the funds.

57. Plaintiff reasonably relied on the misrepresentations and did, in fact, expend substantial efforts to increase the value of the funds such that the funds increased in value dramatically.

58.     Capitol Health engaged in conduct linking it to Plaintiff and evincing their understanding of that reliance.

59.     Plaintiff was injured as a result of these misrepresentations because she was never compensated for her effort and performance.

## COUNT V -- FRAUDULENT INDUCEMENT

60.     Plaintiff repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if repeated herein verbatim.

61.     Capitol Health made misrepresentations of material existing fact to Plaintiff regarding fair and appropriate bonuses she would be awarded and/or her participation in the carry for her efforts in adding value to the funds.

62.     The misrepresentations were false and were known to be false by Capitol Health when made.

63.     Capitol Health made the misrepresentations for the purpose of inducing Plaintiff's reliance and to induce her to expend considerable effort, "sweat equity," and contacts in adding value to present and future Capitol Health funds.

64.     Plaintiff justifiably relied upon the alleged misrepresentation because, based upon her ability to substantially increase the value of the funds, it was reasonable that Capitol Health would provide her a fair and appropriate bonus and/or share of the carry from each of them.

65.     Plaintiff was injured as a proximate consequence of her reliance upon these misrepresentations because, although she expended such effort that increased the value of the fund, she was never compensated for her performance.

## COUNT VI -- FRAUDULENT MISREPRESENTATION

66. Plaintiff repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if repeated herein verbatim.

67. Capitol Health made a misrepresentation of fact by stating that Plaintiff would receive a fair and appropriate bonus and/or share a portion of the carry of the respective funds based upon her "sweat equity," contacts, and the significant value that she added to the funds, regardless of which entity is involved.

68. Capitol Health knew the falsity of this representation and made this representation intentionally in order to defraud or mislead Plaintiff into adding significant value to the funds.

69. Plaintiff reasonably relied on the misrepresentation because, based upon the significant amount of value that she could and did add to the respective funds, it was reasonable to understand that she would receive a fair and appropriate bonus and/or a portion of the carry based upon her performance.

70. Plaintiff suffered damage as a result of her reliance on Capitol Health's representation because she expended significant effort and resources in increasing the value of the funds but she has not been compensated for this increase in value.

## COUNT VII – CONSTRUCTIVE FRAUD

71. Plaintiff repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if repeated herein verbatim.

72. Plaintiff and Capitol Health were in a confidential relationship.

73. Capitol Health made representations to Plaintiff regarding fair and appropriate bonuses and/or her participation in the carry of present and future funds based upon her "sweat equity."

74. This representation was false because Capitol Health refused to confer to Plaintiff any bonuses or a portion of the carry as they promised for the value that she conferred upon the respective funds.

75. Capitol Health had the intent to induce Plaintiff's reliance on the false representation and intended for her to confer valuable services that would increase the value of the funds, which she did in fact confer.

76. Plaintiff, in reliance on the false representations, worked diligently to increase the value of the funds through her "sweat equity" and contacts in anticipation of garnering a fair share of the carry for each fund.

77. Plaintiff was ignorant that Capitol Health representations were false and performed fully in anticipation receiving fair and appropriate bonuses and/or her share of the carry for each fund.

78. Plaintiff was injured because she was terminated without receiving any of the value she was promised for the substantial increase in value that she provided to the funds.

## COUNT VIII -- UNJUST ENRICHMENT

79. Plaintiff repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if repeated herein verbatim.

80. Capitol Health was enriched with an increase in value to their funds, present and future, by Plaintiff's services and extensive contacts.

81. This enrichment was at the expense of Plaintiff's extensive efforts and diligent work.

82. It would be against equity and good conscience to permit Capitol Health to retain the benefit without paying Plaintiff for its value.

## COUNT IX -- CIVIL CONSPIRACY

83. Plaintiff repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if repeated herein verbatim.

84. Capitol Health engaged in the underlying torts described in this Complaint.

85. Capitol Health combined with two or more other parties, including their own co-Defendants, to fraudulently or negligently misrepresent facts regarding participation in the funds' carry to Plaintiff to induce her to expend significant effort to increase the value of their funds. Capitol Health also agreed that, rather than paying Plaintiff fair and appropriate bonuses and/or her share of the carry of the respective funds, they would terminate her and pay her nothing so they could reap the substantial increase in value themselves.

86. Capitol Health engaged in overt acts in furtherance of the agreement, including making false representations to Plaintiff and terminating her employment without compensating her.

87. Capitol Health intentionally participated in furtherance of this plan or purpose so that they could keep an even larger portion of the substantial increase in the funds value themselves.

88. Plaintiff was damaged and injured because she expended considerable effort and increased the value of the funds, only to be terminated without the compensation that had been promised to her.

## COUNT X -- EQUITABLE ESTOPPEL

89. Plaintiff repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if repeated herein verbatim.

90. Plaintiff relied upon a misrepresentation or concealment of facts by Capitol Health in that she expended considerable efforts, "sweat equity," and contacts to add value to Capitol Health's present and future funds, based upon Capitol Health's misrepresentations that she would be compensated with fair and appropriate bonuses and/or a share of the carry from those funds.

91. Plaintiff's position changed for the worse based upon her reliance because she was never compensated for her efforts, though she added substantial value to the respective funds.

92. Plaintiff did not know the truth that Capitol Health would terminate her so that they would not have to compensate her for her efforts as they had promised.

93. Plaintiff's reliance was reasonable because, based upon the substantial value that she conferred upon the funds, it was reasonable that Capitol Health would compensate her by giving her fair and appropriate bonuses and/or a portion of the carry as promised.

94. Refusing estoppel would cause her injury because she will remain uncompensated for the significant effort, "sweat equity," and contacts that she used to add value to the funds.

95. Capitol Health should be equitably estopped from denying her the fair and appropriate share of the carry with regard to Capitol Health's present and future funds, based upon the substantial value that she added to the respective funds.

**COUNT XI -- PROMISSORY ESTOPPEL**

96. Plaintiff repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if repeated herein verbatim.

97. Capitol Health made Plaintiff a promise that was clear and unambiguous in its terms that she would receive fair and appropriate bonuses and/or a portion of the carry from present and future funds for the substantial value that Plaintiff added to those funds through her efforts.

98. Plaintiff reasonably relied upon the promise Capitol Health made to her because, based upon the substantial value that she added to the funds, it was reasonable that she receive fair and appropriate bonuses and/or a portion of the carry for her exceptional efforts.

99. Plaintiff's reliance was expected and foreseeable by Capitol Health. Indeed, Capitol Health made the promises to Plaintiff with the hopes that she would expend effort to add value to the funds.

100. Plaintiff has sustained an unconscionable injury in reliance upon the promise because she has not been compensated for her efforts, which did in fact add substantial value to the funds, as promised by Capitol Health.

101. Capitol Health should be promissorily estopped from denying her the fair and appropriate bonuses and/or a share of the carry from present and future funds, based upon the significant value that she added to the respective funds.

### COUNT XII – EQUITABLE ACCOUNTING

102. Plaintiff repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if repeated herein verbatim.

103. Plaintiff was in a confidential relationship with Capitol Health.

104. This confidential relationship induced Plaintiff to entrust Capitol Health with money or property because she transferred substantial services to Capitol Health and sacrificed numerous opportunities that were offered to her.

105. Plaintiff provided her services in reliance upon promises and assurances made by Capitol Health that she would receive fair and appropriate bonuses and/or share in the carry of their funds.

106. Such promises were known by Capitol Health to be false, and in reliance on such promises and representations, Plaintiff devoted her talents and energies to Capitol Health for which they were unjustly benefited.

107. Since many of these transactions are not evidenced by writings, Plaintiff does not have an adequate remedy at law.

108. Capitol Health should be required to provide her an equitable accounting of Capitol Health Partners, LP, Capitol Health Partners III, LP, and any other present or future funds.

## COUNT XIII – CONSTRUCTIVE TRUST

109. Plaintiff repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if repeated herein verbatim.

110. Plaintiff was in a confidential or fiduciary relationship with Capitol Health.

111. Capitol Health promised to compensate Plaintiff for her services with fair and appropriate bonuses and/or a share of the carry from present and future funds, based upon her "sweat equity" and the value that she added to the respective funds.

112. Plaintiff transferred something of value to Capitol Health in reliance on their promises by providing valuable services and contacts to Capitol Health which greatly increased the value of the funds.

113. If Capitol Health retains the benefit received from Plaintiff's services and contacts, it would be unjust considering the circumstances of the transfer and the relationship of the parties.

114. A constructive trust should be placed upon Capitol Health Partners, LP, Capitol Health Partners III, LP, and any present or future funds to ensure that Plaintiff receives the portion of the carry promised to her that reflects the value she added to the respective funds.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for judgment against Defendants ordering them to pay appropriate monetary damages, together with costs and interest, demands a trial by jury, and prays for such other legal and equitable relief as the Court may deem just and proper.

Dated:   New York, New York
         July 25, 2008

_/s/ Todd Duffy_
Todd Duffy, Esquire
James E. Atkins, Esquire
Duffy & Atkins, LLP
Seven Penn Plaza, Suite 420
New York, NY 10001
Tel. (212) 268-2685
Fax. (212) 500-7972

and

Paul H. Hulsey, Esquire
Cherie K. Durand, Esquire
Reynaldo Quinones, Esquire
S. Fraser Reid, III, Esquire
HULSEY LAW GROUP, LLC
Charleston Harbor
2 Wharfside 3
Charleston, SC 29401
Tel. (843) 723-5303
Fax. (843) 723-5307